HERRICK, FEINSTEIN LLP
*Proposed Attorneys for the Debtor and Debtor*
*in Possession*
Joshua J. Angel
Frederick E. Schmidt, Jr.
Seth F. Kornbluth
Justin B. Singer
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
jangel@herrick.com
eschmidt@herrick.com
skornbluth@herrick.com
jsinger@herrick.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| THE GLAZIER GROUP, INC., | Case No. 10-_____ (    ) |
| Debtor. | |

-------------------------------------------------------x

## AFFIDAVIT OF PETER GLAZIER PURSUANT TO LOCAL RULE 1007-2 IN SUPPORT OF FIRST-DAY MOTIONS AND APPLICATIONS

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ss: |
| COUNTY OF NEW YORK | ) |

Peter Glazier, being duly sworn, hereby deposes and says:

1.      I am the Chief Executive Officer ("CEO") of the Glazier Group, Inc. ("GGI" or "Debtor"). The Debtor commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on the date hereof (the "Petition Date"). In my capacity as CEO, I am familiar with the day-to-day operations, business, and financial affairs of the Debtor.

2.    I submit this Affidavit pursuant to Rule 1007-2 of the Local Bankruptcy Rules of the Southern District of New York (the "Local Rules") to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of this chapter 11 case and in support of the first-day motions and applications filed contemporaneously herewith.

3.    Except as otherwise indicated, all facts set forth in this Affidavit are based upon my personal knowledge, my discussions with other members of the Debtor's senior management, my review of the relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor's operations and financial affairs.  If called upon to testify, I would testify competently to the facts set forth in this Affidavit.  I am authorized to submit this Affidavit on behalf of the Debtor.

## I.    THE DEBTOR AND EVENTS LEADING TO THE CHAPTER 11 CASE

4.    The Debtor is privately owned by myself.  It is a New York Corporation with its principal place of business located in New York, New York.

5.    On September 19, 2007 General Electric Capital Corporation ("GECC") made a joint and several partially collateralized loan to the Debtor and the following Debtor affiliates:  Big Bones Limited Partnership, Big Bones Liquor, Inc., Boca Bones, LLC, Delta Dallas Alpha Corp., Fifth Avenue Ballroom LLC, Funny Bone LLC, Matthew Port, LLC, Penny Port, LLC, Strip House Las Vegas, LLC, Strip House Naples, LLC, Strip House Puerto Rico, LLC, Tapika Brands, Inc., T-Bone Restaurant LLC (collectively the "Affiliates").  The Debtor and the Affiliates operate as a single economic enterprise and the loan, which was originally in the amount of Seven Million Dollars ($7,000,000.00), currently has an unpaid balance of approximately $5.8 million.[1]

---

[1] By letter dated November 10, 2010, GECC claims the outstanding balance of the loan is $5,823,869.05. The Debtor reserves the right to contest this calculation.

HF 6135287v.4 #14758/0001

GGI, through various management agreements, operates and manages the following restaurants owned by the Affiliates in New York: Bridgewater's, 24 Fifth Avenue and Michael Jordan's. It also operates and manages six Strip House restaurants in New York, New Jersey, Florida (2), Texas and Nevada (collectively, the "Restaurants").

6.     GGI provides management and support services including but not limited to accounting, human resources, purchasing, public relations, maintenance, culinary and executive management to the Restaurants. Receipts from the Restaurants operations, both credit cards and cash, are either directly deposited, or swept into a central GGI bank account upon receipt. The monies are then utilized to pay the expenses of the individual restaurants such as payroll. GGI's own payroll and direct expenses are also paid by GGI.

7.     As of November 2010, the Debtor and its Affiliates had unaudited consolidated assets of approximately $15,185,464; and recorded consolidated liabilities which totaled approximately $26,789,370. Consolidated revenues for the group for the nine months which ended September 30, 2010, were approximately $27,186,714.

8.     The Debtor currently employs 14 full-time employees, all of whom are salaried employees, and the Affiliates employ approximately 548 full and part time persons. Payroll for Affiliate employees are paid, pursuant to management agreements between the Debtor and each of the Affiliates, by the Debtor. The payroll account is funded by all VISA and MasterCard credit card receipts of the Affiliates.

9.     Immediately prior to the onset of the current recession, GGI's Restaurant operations were expanding. Having deployed too much of its liquidity in expansion, GGI in the downturn was forced to close 5 of its newly opened restaurant facilities as it went into workout mode on the GECC Loan.

10. Although it is current in the payment of interest on the GECC Loan, GGI has been unable to conclude a satisfactory loan restructure agreement with GECC. That inability was the chief factor giving rise to GGI decision to seek Chapter 11 relief.

11. The Debtor filed this chapter 11 case (the "Chapter 11 Case") in order to obtain some breathing room and to remain in legal possession of its business while it concludes the reorganization of its business activities.

## II. THE FIRST DAY MOTIONS

12. The Debtor intends to file the following First Day Motions, which require a hearing on an emergent basis.

- <u>Application for Authorization to Pay Pre-Petition Wages</u>: Substantially simultaneously herewith, the Debtor intends to file an application (the "Wage Application") seeking authorization to pay the pre-petition wages and benefits of the Debtor's employees. The Debtor seeks authorization to pay approximately $186,888.14 in GGI accrued pre-petition compensation and employee benefit obligations. As more fully set forth in the Wage Application, the Debtor requires authorization to pay its employee compensation obligations in order to avoid immediate and irreparable harm and to ensure the continuity of the Debtor's business operations. Simply put, the failure to pay pre-petition employee compensation would place the Debtor in a position where it could lose its employees. The Debtor's employees are critical to its ability to continue its business operations. Accordingly, the ability to pay pre-petition employee obligations is necessary for the Debtor's reorganization efforts. The Wage Application, therefore, seeks authorization to pay its employee compensation obligations up to the individual priority amounts as set forth in sections 507(a)(4) and (5) of the Bankruptcy Code.

- <u>Application for an Extension of Time to File Schedules and Statement of Financial Affairs</u>: Substantially simultaneously herewith, the Debtor intends to file an application (the "Schedules Application") by which the Debtor seeks an extension of thirty (30) days from the Petition Date to file its schedules of assets and liabilities and statement of financial affairs (collectively, the

"Schedules"). As set forth in its Schedules Application, the Debtor believes it will be unable to comply with the statutory deadline due to the exigencies inherent in its chapter 11 filing. Accordingly, as more fully set forth in the Schedules Application, the Debtor respectfully requests a thirty-day extension of its deadline to file its Schedules.

- <u>Motion for Order Authorizing Maintenance of Cash Management System</u>: The Debtor intends to file an application (the "Cash Management Application") substantially simultaneously herewith which seeks authorization for the continued maintenance of the Debtor's existing bank accounts, cash management system and existing business forms. As more fully set forth in the Cash Management Application, the maintenance of the Debtor's existing cash management system whereby all credit card receipts and cash of the Affiliates are placed into the Debtor's bank accounts would ease the disruption attendant to the Debtor's filing of this Chapter 11 Case.

- <u>Motion for Interim Order Authorizing Assumption of Certain Executory Contracts</u>: One of the most important "First Day Motions" the Debtor intends to file is a motion (the "Assumption Motion") seeking the immediate assumption, pursuant to 11 U.S.C. § 365, of the Debtor's management agreements with its Affiliates (collectively, the "Management Agreements"). As more fully set forth in the Assumption Motion, the Debtor operates and manages the restaurant operations of each of the Affiliates pursuant to the Management Agreements. The Debtor is required, among other things, to pay the Affiliates' payroll and operational expenses under the Management Agreements for which it receives a management fee equal to the greater of the cost of operating each restaurant or 3% of the restaurant's revenues. The ability to immediately assume the Management Agreements is crucial to the Debtor's survival because it would enable the Debtor to seamlessly pay all Affiliate payroll and operational obligations under the Management Agreements as a "cure." Absent this ability, the Debtor would be unable to pay these contractual pre-petition expenses. The assumption of the Management Agreements would ensure that all Affiliate payroll and operational expenses are paid on a timely basis thus enabling the Affiliates to continue their business operations without regard to the Debtor's filing of its Chapter 11 Case. Conversely, the Debtor's inability to pay pre-petition obligations under the Management Agreement would immediately and irreparably damage the Affialites' (and thus the Debtor's) business operations.

- <u>Application for Interim Order Authorizing Use of Cash Collateral</u>: Lastly, the Debtor intends to file an application (the "Cash

HF 6135287v.4 #14758/0001

Collateral Application") seeking authority to use cash collateral on a non-consensual basis. As adequate protection for the Debtor's use of cash collateral, the Debtor proposes to grant its pre-petition secured lender, GECC, liens on all post-petition assets (to the extent that such assets were encumbered by valid properly perfected GECC liens pre-petition) and to make monthly adequate protection payments of $5,000 which payments shall reduce the principal secured indebtedness of the Debtor to GECC. Because the use of cash collateral is absolutely essential to the Debtor's business operations, and because the Debtor proposes to adequately protect GECC's interests in cash collateral, the Debtor respectfully submits that the relief sought in the Cash Collateral Application should be granted.

## III.  INFORMATION REQUIRED BY LOCAL RULE 1007-2

13.  Local Rule 1007-2 requires certain information related to Debtor, which is set forth below.

14.  The information required by Local Rule 1007-2(a)(1) is set forth in Part I above.

15.  In response to the information requested in Local Rule 1007-2(a)(3), to the best of my knowledge, no committee has been organized prior to the Petition Date.

16.  Pursuant to Local Rule 1007-2(a)(4), Schedule 1 hereto lists the following information with respect to each of the holders of the Debtor's 25 largest unsecured claims on a consolidated basis, excluding claims of insiders: the creditor's name, address, and telephone number; the name(s) of person(s) familiar with the Debtor's accounts, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

17.  Pursuant to Local Rule 1007-2(a)(5), Schedule 2 hereto provides the following information with respect to the Debtor's secured creditors, on a consolidated basis: the creditor's name, address (including the number, street, apartment

or suite number, and zip code, if not included in the post office address), and telephone number; the amount of the claim; a brief description of the collateral securing the claim; an estimate of the value of the collateral and whether the claim or lien is disputed.

18.     Pursuant to Local Rule 1007-2(a)(6), Schedule 3 provides a summary of the Debtor's assets and liabilities.

19.     In response to the information requested in Local Rule 1007-2(a)(7), the Debtor does not have any publicly held stock, debentures or other securities.

20.     In response to the information requested in Local Rule 1007-2(a)(8), the Debtor does not have any property in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditors, or agent for any such entity.

21.     Pursuant to Local Rule 1007-2(a)(9), Schedule 4 hereto provides a list of the premises owned, leased or held under other arrangement from which the Debtor operates its business.

22.     Pursuant to Local Rule 1007-2(a)(10), Schedule 5 hereto provides the location of the Debtor's substantial assets, the location of its books and records, and the nature, location and value of any assets held by the Debtor outside the territorial limits of the United States.

23.     Pursuant to Local Rule 1007-2(a)(11), Schedule 6 hereto provides a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtor or its property.

24.     Pursuant to Local Rule 1007-2(a)(12), Schedule 7 hereto provides a list of the names of the individuals who comprise the Debtor's existing senior

management, their tenure with the Debtor, and a brief summary of their relevant responsibilities and experience.

25.     Pursuant to Local Rule 1007-2(b)(1)-(2)(A), Schedule 8 hereto provides the estimated amount of bi-weekly payroll to the Debtor's employees (not including officers, directors and stockholders) and the estimated amount to be paid to officers, stockholder, directors and financial and business consultants retained by the Debtor, for the thirty (30) day period following the filing of the Debtor's chapter 11 petition.

26.     Pursuant to Local Rule 1007-2(b)(3), Schedule 9 hereto provides for the thirty (30) day period following the filing of the chapter 11 petition, a list of estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

27.     The foregoing is true to the best of my knowledge, information and belief.

THE GLAZIER GROUP

By: _____
        Peter Glazier, CEO


        Sworn to and subscribed before me, a notary public for the State of New York, County of New York, this ___ day of _November_, 2010.

_____
        Notary Public

**SETH KORNBLUTH**
Notary Public, State of New York
No. 02KO6047532
Qualified in New York County
Commission Expires September 5, 2014

**Schedule 1**

**List of Creditors Holding 25 Largest Unsecured Claims**

Pursuant to Local Bankruptcy Rule 1007-2(a)(4), the following is a list of those creditors holding the 25 largest unsecured claims against the Debtor, on a consolidated basis. This list has been prepared from the books and records of the Debtor, and in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure in connection with the filing of the Debtor's chapter 11 petitions. This list does not include (a) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, (b) secured creditors unless the value of the collateral is less than the total amount of such creditors claim or (c) claims held by any of the Debtor's employees.

The information set forth on the Schedule shall not constitute an admission of liability by, nor is binding on, the Debtor, and the failure to list a claim as contingent, disputed or subject to set-off shall not be deemed a waiver of any of the Debtor's rights related thereto.

**[SEE FOLLOWING PAGE]**

HF 6135287v.3 #14758/0001

# United States Bankruptcy Court
## Southern District of New York

In re    The Glazier Group, Inc.                  Case No.    **10-16099**

                         Debtor(s)                  Chapter     **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| Atkinson, Diner, Stone, Mankutan & Ploucha P.A.<br>One Financial Plaza, # 1400<br>Fort Lauderdale, FL 33394 | Atkinson, Diner, Stone, Mankutan & Ploucha P.A.<br>One Financial Plaza, # 1400<br>Fort Lauderdale, FL 33394 | Lawsuit for legal fees | Contingent<br>Unliquidated<br>Disputed | 233,939.50 |
| Mark C.H. Mandell<br>c/o D'Arrigo Food Service<br>42 Herman Thau Road<br>Annandale, NJ 08801 | Mark C.H. Mandell<br>c/o D'Arrigo Food Service<br>42 Herman Thau Road<br>Annandale, NJ 08801 | PACA lawsuit | Contingent<br>Unliquidated<br>Disputed | 209,212.00 |
| Barry S. Schwartz<br>c/o 535-545 Fee LLC<br>119 West 57th Street<br>New York, NY 10019 | Barry S. Schwartz<br>c/o 535-545 Fee LLC<br>119 West 57th Street<br>New York, NY 10019 | Lawsuit for breach of lease agreement regarding corporate office | Contingent<br>Unliquidated<br>Disputed | 159,928.03 |
| 535 Owners LLC<br>P.O. Box 3027<br>Hicksville, NY 11802-3027 | 535 Owners LLC<br>P.O. Box 3027<br>Hicksville, NY 11802-3027 | Vendor | | 152,232.57 |
| Cole Schotz, PA<br>25 Main Street<br>P.O. Box 800<br>Hackensack, NJ 07602-0880 | Cole Schotz, PA<br>25 Main Street<br>P.O. Box 800<br>Hackensack, NJ 07602-0880 | Vendor | | 137,892.64 |
| MARKS PANETH & SHRON, LLP.<br>88 Froehlich Farm Boulevard<br>Woodbury, NY 11797 | MARKS PANETH & SHRON, LLP.<br>88 Froehlich Farm Boulevard<br>Woodbury, NY 11797 | Vendor | | 101,444.03 |
| PREMIUM SUPPLY, CO., INC.<br>960 Grand Blvd.<br>Deer Park, NY 11729 | PREMIUM SUPPLY, CO., INC.<br>960 Grand Blvd.<br>Deer Park, NY 11729 | Vendor | | 95,887.50 |
| Houslanger & Associates PLLC<br>c/o Barnacle Seafood, Inc.<br>372 New York Avenue<br>Huntington, NY 11743 | Houslanger & Associates PLLC<br>c/o Barnacle Seafood, Inc.<br>372 New York Avenue<br>Huntington, NY 11743 | Lawsuit for breach of contract | Contingent<br>Unliquidated<br>Disputed | 83,321.58 |
| Shawmut Woodworking & Supply<br>Attn: Douglas Lareau<br>560 Harrison Avenue<br>Boston, MA 02118 | Shawmut Woodworking & Supply<br>Attn: Douglas Lareau<br>560 Harrison Avenue<br>Boston, MA 02118 | | | 79,030.00 |

In re   The Glazier Group, Inc.                                         Case No.   10-16099
_____                                    _____
                        Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| (1)<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5)<br><br>Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Maidenbaum & Associates PLLC<br>c/o Niche Media Holdings LLC<br>One Broadcast Plaza, Ste 218<br>Merrick, NY 11566 | Maidenbaum & Associates PLLC<br>c/o Niche Media Holdings LLC<br>One Broadcast Plaza, Ste 218<br>Merrick, NY 11566 | Lawsuit | Contingent<br>Unliquidated<br>Disputed | 65,923.13 |
| First Insurance Funding Corp.<br>450 Skokie Blvd., Ste. 1000<br>Northbrook, IL 60062 | First Insurance Funding Corp.<br>450 Skokie Blvd., Ste. 1000<br>Northbrook, IL 60062 | Vendor | | 59,078.94 |
| Aetna-Dental<br>P.O. Box 88860<br>Chicago, IL 60695-1860 | Aetna-Dental<br>P.O. Box 88860<br>Chicago, IL 60695-1860 | Vendor | | 47,921.06 |
| United HealthCare Insurance Company<br>Dept 10151<br>Palantine, IL 60055-0151 | United HealthCare Insurance Company<br>Dept 10151<br>Palantine, IL 60055-0151 | Vendor | | 45,152.15 |
| Retail Automation Products<br>45 West 38th Street<br>New York, NY 10018 | Retail Automation Products<br>45 West 38th Street<br>New York, NY 10018 | Vendor | | 43,144.87 |
| Newmarket International, Inc.<br>P.O. Box 845707<br>Boston, MA 02284-5707 | Newmarket International, Inc.<br>P.O. Box 845707<br>Boston, MA 02284-5707 | Vendor | | 38,158.14 |
| Bank of America<br>P. O. Box 15019<br>Wilmington, DE 19886-5019 | Bank of America<br>P. O. Box 15019<br>Wilmington, DE 19886-5019 | Vendor | | 34,279.69 |
| Totz Ellison & Totz, P.C.<br>c/o Katz Coffee Equipment<br>2211 Norfolk, Suite 510<br>Houston, TX 77098 | Totz Ellison & Totz, P.C.<br>c/o Katz Coffee Equipment<br>2211 Norfolk, Suite 510<br>Houston, TX 77098 | Settlement agreement | Contingent<br>Unliquidated<br>Disputed | 34,000.00 |
| Juliette Donato Bofill<br>c/o V. Suarez & Co., Inc.<br>Garden Hills Plaza 13353 #19<br>Guaynabo, PR 00966-2700 | Juliette Donato Bofill<br>c/o V. Suarez & Co., Inc.<br>Garden Hills Plaza 13353 #19<br>Guaynabo, PR 00966-2700 | Lawsuit (Default judgment) | Contingent<br>Unliquidated<br>Disputed | 32,764.44 |
| GrayRobinson<br>P.O. Box 3068<br>Orlando, FL 32802-3068 | GrayRobinson<br>P.O. Box 3068<br>Orlando, FL 32802-3068 | Vendor | | 30,922.58 |
| OXFORD HEALTH PLANS<br>225 Broadhollow Road, Suite 210E<br>Melville, NY 11747 | OXFORD HEALTH PLANS<br>225 Broadhollow Road, Suite 210E<br>Melville, NY 11747 | Vendor | | 30,046.28 |

In re    The Glazier Group, Inc.                                Case No. _____

                            Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
## (Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| Niche Media LLC<br>Bank of America Lockbox Services<br>15325 Collections Center Drive<br>Chicago, IL 60693 | Niche Media LLC<br>Bank of America Lockbox Services<br>15325 Collections Center Drive<br>Chicago, IL 60693 | Vendor | | 29,625.00 |
| Herzfeld & Rubin PC<br>125 BROAD STREET<br>NEW YORK, NY 10004 | Herzfeld & Rubin PC<br>125 BROAD STREET<br>NEW YORK, NY 10004 | Vendor | | 27,711.30 |
| SHEPPARD MULLIN RICHTER & HAMPTON LLP<br>333 SOUTH HOPE STREET<br>LOS ANGELES, CA 90071-1448 | SHEPPARD MULLIN RICHTER & HAMPTON LLP<br>333 SOUTH HOPE STREET<br>LOS ANGELES, CA 90071-1448 | Vendor | | 25,000.00 |
| Rabinowitz, Lubetkin & Tully LLC<br>293 Eisenhower Parkway Suite 100<br>Livingston, NJ 07039 | Rabinowitz, Lubetkin & Tully LLC<br>293 Eisenhower Parkway Suite 100<br>Livingston, NJ 07039 | Vendor | | 22,898.28 |
| DELL COMMERCIAL CREDIT<br>P.O. Box 689020<br>Des Moines, IA 50368-9020 | DELL COMMERCIAL CREDIT<br>P.O. Box 689020<br>Des Moines, IA 50368-9020 | Vendor | | 19,374.63 |
| Santoro, Driggs, Walch, Kearney, Holley&<br>Attorneys<br>400 South Fourth Street, 3rd Floor<br>Las Vegas, Nevada 89101-0000 | Santoro, Driggs, Walch, Kearney, Holley&<br>Attorneys<br>400 South Fourth Street, 3rd Floor<br>Las Vegas, Nevada 89101-0000 | Vendor | | 18,463.73 |
| Pamela Printing Company<br>550 Julie Rivers Drive, Suite 310<br>SugarLand, TX 77478 | Pamela Printing Company<br>550 Julie Rivers Drive, Suite 310<br>SugarLand, TX 77478 | Vendor | | 17,042.68 |

**Schedule 2**

**List of Largest Secured Creditors**

Pursuant to Local Bankruptcy Rule 1007-2(a)(5), the creditors holding secured claims against the Debtor are listed below. This list has been prepared from the books and records of the Debtor, and in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure, in connection with the filing of the Debtor's case under chapter 11.

The information set forth on the Schedule shall not constitute an admission of liability by, nor is binding on, the Debtor, and the failure to list a claim as contingent, disputed or subject to set-off shall not be deemed a waiver of any of the Debtor's rights related thereto.

| Name of Creditor | Amount of Claim | Type of Collateral | Value of Collateral | Disputed |
|---|---|---|---|---|
| General Electric Capital Corporation<br>10 Riverview Drive<br>Danbury, CT 06810<br>Attn: David A. Burger<br>Tel: (203) 749-6194<br>david.burger@ge.com | $5.8 million[2] | Miscellaneous | Unknown | No |

---

[2] By letter dated November 10, 2010, GECC claims the outstanding balance of the loan is $5,823,869.05. The Debtor reserves the right to contest this calculation.

HF 6135287v.3 #14758/0001

**Schedule 3**

**Assets and Liabilities of the Debtor**

**[SEE FOLLOWING PAGES]**

HF 6135287v.3 #14758/0001

Consolidated

Assets

**Current Assets**

Cash (886,750)

Accounts Receivable (1,358,937)

Investor & Affiliate Receivable 3,861,767

Pre-Paid Assets 50,434

Inventory 558,890

**Total Current Assets** 2,225,405

Fixed Assets 10,792,437

Intangibles 1,887,495

Other Assets 280,128

**Total Assets** 15,185,464

|  | November 2010 |
|---|---|
| **Liabilities and Equity** | |
| **Current Liabilities** | |
| Accounts Payable | 7,117,828 |
| Accrued Expenses | 936,150 |
| Accrued Payroll Expenses | 1,449,736 |
| Other Current Liabilities | 72,047 |
| Advance Deposits          20302-00-00 | (761) |
| Sales Tax Payable | 981,971 |
| Taxes Payable | 59,657 |
| **Total Current Liabilities** | 10,616,627 |
| Long Term Notes Payable | 8,695,843 |
| Other Long Term Liabilities | 7,476,900 |
| **Total liabilities** | 26,789,370 |
| **Equity** | |
| Equity | 64,000 |
| Additional Paid In Capital | 1,423,994 |
| Retained Earnings | (13,091,900) |
| **Total Equity** | (11,603,906) |
| **Total Liabilities and Equity** | 15,185,464 |

**Schedule 4**

**List of Owned/Leased/Otherwise Held Premises**

Pursuant to Local Bankruptcy Rule 1007-2(a)(9), listed below is the property or premises owned, leased or held under other arrangements by the Debtor from which the Debtor operates its business.

**Owned Property**

The Debtor does not own any real property.

**Leased Property**

| Premises Address | City | State | Zip Code | Country |
|---|---|---|---|---|
| 535 Fifth Avenue | New York | NY | 10036 | USA |

HF 6135287v.3 #14758/0001

## Schedule 5

### Location of Debtor's Books and Records

Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the Debtor has books and records in its principal offices located at 530 Fifth Avenue, New York, New York 10036.

### Location of Affiliate Substantial Assets

The Debtor's substantial assets consists of its receivables which are located in New York, New York.

15

## Schedule 6

## Litigation

Pursuant to Local Bankruptcy Rule 1007-2(a)(11), the following is a list of the actions or proceedings, pending or threatened, against the Debtor or its property where a judgment against the Debtor or a seizure of its property may be imminent.

| Action or Proceeding | Nature of Action | Status of Action |
|---|---|---|
| Fireman's Fund Insurance Co. v. Glazier Group Inc. (Kings County, NY) | Monies owed | Complaint filed. |
| Atkinson, Diner, Stone, Mankuta & Ploucha, P.A. v. Peter Glazier, The Glazier Group, Inc. and Funny Bone, LLC (Broward County, FL - 09023040) | Monies Owed | Mediation scheduled |
| Alfonso Garate v. 13 East 12th Street LLC and The Glazier Group, Inc. (Kings County, NY - No. 18026/10) | Personal injury | Complaint filed |
| V. Suarez & Co., Inc. v. The Glazier Group LLC (San Juan, PR - CD2009-3631) | Monies owed | Default judgment entered |
| Cadillac Uniform & Linen Supply, Inc. v. The Glazier Group LLC h/n/c Strip House Restaurant (San Juan, PR - KCD2010-2964) | Monies owed | Motion filed |
| D'Arrigo Food Service, Inc. and Foodland Distributors, Inc. v. The Glazier Group, et. al. (SDNY - 09-CIV-10076) | Perishable Agricultural Commodities Act action | Mediation |
| Niche Media Holdings LLC v. The Glazier Group Inc. (New York, NY - 102332-10) | Monies owed | Complaint filed |
| Barnacle Seafood, Inc. v. The Glazier Group, Inc. (New York, NY - 09-113145) | Monies owed | Complaint filed |
| Threatened Actions | Nature of Action | Status |
| GrayRobinson | Monies owed | Settlement offer |
| De Lage Landen | Monies owed | Demand letter |

HF 6135287v.3 #14758/0001

# Schedule 7

## Senior Management

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following is a list of individuals comprising the Debtor's existing senior management, describing their tenure and relevant responsibilities and experience.

| Name/Position | Experience/Responsibilities |
|---|---|
| **Peter H. Glazier, CEO** | **Founder and executive manager with over 30 years experience** |
| **Mathew Glazier, President and General Counsel** | **10 years experience** |
| **Walter Perkowetz, COO** | **30 years experience** |

HF 6135287v.3 #14758/0001

## Schedule 8

## Payroll

Pursuant to Local Bankruptcy Rule 1007-2(b)(1)-(2) (A) and (C), the following provides the Debtor's estimated payroll for employees (not including officers, directors and stockholders), and the estimated amount to be paid to officers, directors, stockholders, and financial and business consultants retained by the Debtor, for the thirty day period following commencement of the Debtor's chapter 11 case.

| Payment to Employees (Not including Officers, Directors and Stockholders) | $54,466.94 |
| --- | --- |
| Payments to Officers, Directors and Stockholder | $105,830.52 |

HF 6135287v.3 #14758/0001

**Schedule 9**

**Cash Receipts and Disbursements,**
**Net Cash Gain or Loss, Unpaid Obligations and Receivables**

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides, for the thirty day period following commencement of its chapter 11 cases, the Debtor's estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

**[SEE FOLLOWING PAGE]**

HF 6135287v.3 #14758/0001

| 30 Day Glazier Cash Flow Projected | | Week 1 | Week 2 | Week 3 | Week 4 |
|---|---|---|---|---|---|
| Net Sales | 3,207,000 | 748,300 | 568,708 | 748,300 | 927,892 |
| | | | | | |
| Cost of Sales | 846,007 | 197,402 | 150,025 | 197,402 | 244,778 |
| | 26.38% | 26.38% | 26.38% | 26.38% | 26.38% |
| | | | | | |
| Gross Profit | 2,360,993 | 550,898 | 418,683 | 550,898 | 683,114 |
| | 73.62% | 73.62% | 73.62% | 73.62% | 73.62% |
| | | | | | |
| Labor | 856,326 | 199,810 | 155,495 | 199,810 | 244,124 |
| Payroll Taxes & Benefits | 149,770 | 34,946 | 26,559 | 34,946 | 43,333 |
| Repairs & Maintenance | 14,407 | 3,362 | 2,555 | 3,362 | 4,169 |
| Marketing Expense | 17,800 | 4,153 | 3,157 | 4,153 | 5,150 |
| Rent | 267,756 | 62,476 | 47,482 | 62,476 | 77,471 |
| CAM, Taxes & Utilities | 125,360 | 29,251 | 22,230 | 29,251 | 36,271 |
| Direct Operating Expense | 129,270 | 30,163 | 22,924 | 30,163 | 37,402 |
| Other Expense (Income) | - | - | - | - | - |
| Restaurant Admin. Expenses | 136,572 | 31,867 | 24,219 | 31,867 | 39,515 |
| Corporate Expenses | 117,279 | 27,365 | 20,797 | 27,365 | 33,933 |
| | | | | | |
| **Store Level EBITDAR** | 814,210 | 189,982 | 140,747 | 189,982 | 239,218 |
| *% of Net Sales* | 23.42% | 5.46% | 4.05% | 5.46% | 6.88% |
| | | | | | |
| **Store Level EBITDA** | 546,454 | 127,506 | 93,264 | 127,506 | 161,747 |
| Check | | | | | |
| *% of Net Sales* | 15.72% | 3.67% | 2.68% | 3.67% | 4.65% |
| | | | | | |
| Bank Service Charge | 22,000 | 5,500 | 5,500 | 5,500 | 5,500 |
| General & Administrative | 163,776 | 38,214 | 29,043 | 38,214 | 47,386 |
| | | | | | |
| **EBITDA** | 360,678 | 83,792 | 58,722 | 83,792 | 108,861 |
| Plus: Tapika Brands EBITDA | | | | | |
| Total Company, Incl Bank Svc. Ch. | 360,678 | 83,792 | 58,722 | 83,792 | 108,861 |
| Check | | | | | |
| *% of Net Sales* | 11.25% | 11.20% | 10.33% | 11.20% | 11.73% |
| | | | | | |
| Rent for Vacant Space Adjacent to Strip House NY | 10,000 | 2,500 | 2,500 | 2,500 | 2,500 |
| DATG Settlement | 19,688 | 4,922 | 4,922 | 4,922 | 4,922 |
| Premium Supply Settlement | 20,338 | 5,084 | 5,084 | 5,084 | 5,084 |
| D'Arrigo Litigation $80k | 6,667 | 1,667 | 1,667 | 1,667 | 1,667 |
| Labor Dispute Settlement $500k | 10,000 | 2,500 | 2,500 | 2,500 | 2,500 |
| Houston Restructured Rent $310k | 9,000 | 2,250 | 2,250 | 2,250 | 2,250 |
| TGG Office Restructured Rent $125k | - | - | - | - | - |
| Brookwood Fee | 3,000 | 750 | 750 | 750 | 750 |
| GE Loan Restructuring Fee | | | | | |
| Depreciation & Amortization | 75,725 | 18,931 | 18,931 | 18,931 | 18,931 |
| Interest Expense | 36,439 | 9,110 | 9,110 | 9,110 | 9,110 |
| **Earnings Before Taxes** | 169,822 | 36,078 | 11,008 | 36,078 | 61,147 |
| | | | | | |
| Taxes | - | - | - | - | - |
| | | | | | |
| **Net Income (Loss)** | 169,822 | 36,078 | 11,008 | 36,078 | 61,147 |
| *% of Net Sales* | 5.30% | 4.82% | 1.94% | 4.82% | 6.59% |
| Plus: Tapika Brands NI (L) | | | | | |
| Total Company | | | | | |
| Check | | | | | |
| | | | | | |
| Net Cash Flow Reconciliation: | | | | | |
| Plus: Depreciation & Amortization | 75,725 | 18,931 | 18,931 | 18,931 | 18,931 |
| Less: Prem. Supply in Jan/Feb 2010 (In Due From Owner) | - | | | | |
| Less: Capital Expenditures | (7,000) | (1,750) | (1,750) | (1,750) | (1,750) |
| Less: Accounts Payable Pay Down | - | | | | |
| Less: Debt Amortization | - | | | | |
| **Net Cash Flow** | 238,547 | 53,259 | 28,189 | 53,259 | 78,329 |