**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re

THE GLAZIER GROUP, INC.,

                Debtor.
-----------------------------------------------------------x

Chapter 11

Case No. 10-16099(ALG)

## MEMORANDUM AND ORDER EXPUNGING CLAIM

The Glazier Group, Inc. ("the Debtor"), as debtor-in-possession in the above-captioned chapter 11 case, has moved to expunge the claim of Premium Supply Co., Inc. ("Premium") in the amount of $273,709.09 ("the Claim") on the grounds that the alleged indebtedness is attributable only to non-debtor affiliate restaurants ("Non-Debtor Affiliates") or has already been satisfied pursuant to a prior settlement entered into by the Debtor, Premium, and the Non-Debtor Affiliates on October 21, 2008 ("the Settlement").[1] Premium argues that the Settlement was merely a stipulated payment schedule, that the Debtor has incurred additional liability since the date of the settlement, and that in any event the Settlement should be disregarded because the Non-Debtor Affiliates are in breach thereof. Premium also argues that this Court should pierce the corporate veil and hold this Debtor liable for the debts of the Non-Debtor Affiliates as their alter ego.

A hearing was held on the motion on June 30, 2011. Neither party requested an evidentiary hearing, but the Court directed the parties to submit supplementary documentation clarifying certain of the claims, in particular the amount of the alleged indebtedness attributable to the period following the October 21, 2008 Settlement. Premium thereafter submitted a spreadsheet indicating that $12,330.87 of the $273,709.09 total was incurred after the date of the

---

[1] Settlement Agreement, Exhibit B to Glazier Group Objection, Dkt. No. 114 (May 19, 2011).

1

Settlement, attributable to six of the Non-Debtor Affiliates.[2] The Debtor responded with a declaration from Chief Restructuring Officer John Dunne stating that the books and records of the Debtor and its affiliates reflected that all the alleged post-settlement deliveries by Premium were billed to the Non-Debtor Affiliates and that at least $6061.78 of the alleged debt had already been paid.

An analysis of the merits of Premium's Claim must begin by reference to the Settlement, the terms of which included a stipulation fixing the amount owed to Premium and the restaurant affiliates to which the indebtedness was attributable, a cure schedule for payment of the stipulated amounts, a personal guarantee for up to $250,000 by the principal equity holder of the Debtor and the Non-Debtor Affiliates, Peter Glazier, and a release of the Debtor from any liability for amounts due under the Settlement. The release provided that:

> Premium Supply acknowledges that The Glazier Group is merely a manager of the Restaurants and in no event shall The Glazier Group be responsible for any moneys owed under this Agreement, although The Glazier Group may make payments on behalf of all or any of the Restaurants. Premium Supply agrees not to seek judgment against The Glazier Group for any sums owed in the case of an uncured default.

Settlement Agreement, ¶ 6. The language of the release clearly provides that the Debtor will not be liable for any indebtedness owed under the Settlement by the Non-Debtor Affiliates. Contrary to the argument advanced by Premium that the Settlement should have no effect because of default under the agreement by the Non-Debtor Affiliates, the language of the release specifically provides that the release of the Debtor would remain effective even in the case of an "uncured default" — *i.e.*, regardless of whether the Non-Debtor Affiliates performed under the Settlement.

---

[2] Letter filed by Michael L. Shanker on behalf of Premium Supply Co. Inc. at 1-2 (Dkt. No. 143).

Premium also contends the Debtor should be held liable for post-settlement indebtedness incurred by the Non-Debtor Affiliates, but it has not provided evidence to support this argument. Premium's own supplemental documentation, a spreadsheet which breaks down the amounts owed according to the Non-Debtor Affiliate restaurants that were billed, suggests that the Debtor was not billed for any of the amounts allegedly due, a fact which is confirmed by the invoices provided by the Debtor from the records of the affiliates, none of which mention the Debtor by name. There is nothing before the Court to indicate that it was intended that the Debtor be liable for goods used by and billed to Non-Debtor Affiliates.

Moreover, the only legal argument provided in support of Premium's contention that the Debtor can be held liable relies on a theory of alter ego liability and the findings of a New York State Court in the case of *Wayne Distrib. Ctr., Inc. v. The Glazier Group, Inc.*, Index No. 603862/08 (N.Y. Sup. Ct. Jan. 8, 2010). That case was an entirely independent suit against the Debtor by a meat supplier unrelated to Premium in which the State Court found that the Debtor could be held liable as the alter ego of one of the Non-Debtor Affiliates. The factual circumstances in that case are distinguishable. For instance, that case involved a credit line opened by both the affiliate and the Debtor together, and no facts suggested that the plaintiff there had treated the Debtor as a distinct legal entity. Here, the release of the Debtor in the Settlement provides sufficient evidence that Premium was aware of the Debtor's existence as a separate and distinct entity which would not be liable for the debts of its affiliates under the Settlement. Furthermore, the guarantee by Peter Glazier provided for in the Settlement demonstrates that Premium was aware of the importance of having recourse to a third party and took steps to provide for an alternative to recovery from the Debtor. In any event, the imposition of alter ego liability in that case does not control the present dispute. In this case, Premium has

not met the "high standard" necessary to support a finding of alter ego liability, as "courts are reluctant to disregard the corporate structure unless provided with a sufficient rationale." *In re Sunbeam Corp.*, 284 B.R. 355, 365 (Bankr. S.D.N.Y. 2002).

## CONCLUSION

Because the release included in the Settlement precludes Premium from seeking recovery from the Debtor for amounts due under the Settlement and because, on the record before the Court, the Debtor cannot be found liable for the post-settlement amounts allegedly due to Premium, Premium's proof of claim is expunged.

**IT IS SO ORDERED.**

Dated: New York, New York
August 10, 2011

/s/ Allan L. Gropper_____
UNITED STATES BANKRUPTCY JUDGE